# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEBORAH S.,[1] <br><br> Plaintiff, <br><br> v. <br><br> ANDREW M. SAUL, <br> Commissioner of Social Security, <br><br> Defendant. | Case No. 5:19-cv-01079-MAA <br><br> **MEMORANDUM DECISION AND ORDER REVERSING DECISION OF THE COMMISSIONER AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS** |

On June 12, 2019, Plaintiff filed a Complaint seeking review of the Social Security Commissioner's final decision denying her applications for disability insurance benefits and supplemental security income pursuant to Titles II and XVI of the Social Security Act. This matter is fully briefed and ready for decision. For the reasons discussed below, the Commissioner's final decision is reversed, and this action is remanded for further administrative proceedings.

///

---

[1] Plaintiff's name is partially redacted in accordance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

## PROCEDURAL HISTORY

On December 28, 2015, Plaintiff protectively filed applications for disability insurance benefits and supplemental security income, alleging disability beginning on December 29, 2012.  (Administrative Record [AR] 15, 174-82.)  Plaintiff alleged disability because of "Diabetes, vertigo, [hypertension], [high blood pressure]; Diabetes; Peripheral Neuropathy; [and] diabetic amyotrophy."  (AR 68, 78.)  After her applications were denied initially and on reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (AR 103-04.)  At a hearing held on June 6, 2018, at which Plaintiff appeared with counsel, the ALJ heard testimony from Plaintiff and a vocational expert.  (AR 31-45.)

In a decision issued on July 23, 2018, the ALJ denied Plaintiff's application after making the following findings pursuant to the Commissioner's five-step evaluation.  (AR 15-26.)  Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date of December 29, 2012.  (AR 17.)  She had a severe impairment consisting of diabetes mellitus with peripheral neuropathy.  (AR 18.)  She did not have an impairment or combination of impairments that met or medically equaled the requirements of one of the impairments from the Commissioner's Listing of Impairments.  (AR 19.)  She had a residual functional capacity for light work with additional non-exertional limitations.  (AR 20.)  She could no longer perform her past relevant work as a "Mental-retardation aide."  (AR 24.)  However, based on her transferable skills, she could perform other work in the national economy, in the occupations of companion, nursery school attendant, and playroom attendant.  (AR 25.)  Thus, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.  (AR 26.)

On April 26, 2019, the Appeals Council denied Plaintiff's request for review.  (AR 1-6.)  Thus, the ALJ's decision became the final decision of the Commissioner.

///

# DISPUTED ISSUE

The parties raise the following disputed issue: whether the ALJ performed an adequate analysis of Plaintiff's transferable skills. (ECF No. 19, Parties' Joint Stipulation ["Joint Stip."] at 5.)

# STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's final decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *See Treichler v. Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The Court must review the record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Lingenfelter*, 504 F.3d at 1035. Where evidence is susceptible of more than one rational interpretation, the Commissioner's interpretation must be upheld. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

# DISCUSSION

## I.     Transferable Skills.

### A.     Legal Standard.

For a worker who can no longer perform her past relevant work, "advancing age decreases the possibility of making a successful vocational adjustment" to other work in the national economy. *See* Social Security Ruling ("SSR") 82-41, 1982 WL 31389, at *5. If a worker is 55 years old or older, and has a severe impairment

that limits her to sedentary or light work, the Commissioner will find her disabled unless she has "skills that [she] can transfer to other skilled or semi-skilled work." *See* 20 C.F.R. §§ 404.1568(d)(4), 416.968(d)(4).

"Transferability means applying work skills which a person has demonstrated in vocationally relevant past jobs to meet the requirements of other skilled or semiskilled jobs." SSR 82-41, 1982 WL 31389, at *2. "A finding of transferability is most probable among jobs that involve: (1) the same or lesser degree of skill; (2) a similarity of tools; and (3) a similarity of services or products." *Renner v. Heckler*, 786 F.2d 1421, 1423 (9th Cir. 1983) (citing 20 C.F.R. § 404.1568(d)(2)). If transferability is an issue in a case, the ALJ's decision must state the relevant findings. *See Bray v. Commissioner of Social Security Admin.*, 554 F.3d 1219, 1223 (9th Cir. 2009) (citing SSR 82-41, 1982 WL 31389, at *7 ("[T]he acquired skills must be identified, and the specific occupations to which the acquired work skills are transferable must be cited in the . . . ALJ's decision.")); *see also Barnes v. Berryhill*, 895 F.3d 702, 704-05 (9th Cir. 2018) (holding that such findings are required for younger workers for whom transferability is at issue).

The transferability standard becomes more stringent when a worker reaches age 60. *See Terry v. Sullivan*, 903 F.2d 1273, 1279 (9th Cir. 1990). Here, Plaintiff was born on June 18, 1958. (AR 78.) She was age 60 by the time of the ALJ's decision on July 23, 2018. The ALJ treated Plaintiff as a person who had entered the age category of "closely approaching retirement age" (*i.e.*, age 60 or older). (AR 24 [citing 20 C.F.R. §§ 404.1563, 416.963].) The ALJ also found that Plaintiff had a severe impairment (AR 18) that limited her to light work (AR 20). Thus, the dispositive issue is whether the ALJ performed an adequate analysis of transferability to skilled or semi-skilled light work for a worker closely approaching retirement age. (Joint Stip. at 6.)

If a worker is closely approaching retirement age, and has a severe impairment that limits her to no more than light work, the Commissioner "will find

4

that [she has] skills that are transferable to skilled or semiskilled light work only if the light work is so similar to [her] previous work that [she] would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry." *See* 20 C.F.R. §§ 404.1568(d)(4), 416.968(d)(4); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 202.00(f). For such a worker, her past work "must be so closely related to other jobs which they can perform that they could be expected to perform these other identified jobs at a high degree of proficiency with a minimal amount of job orientation." *See* SSR 82-41, 1982 WL 31389, at *5. When a worker is limited to very little vocational adjustment, "the ALJ must either make a finding of 'very little vocational adjustment' or otherwise acknowledge that a more stringent test is being applied which takes into consideration [the worker's] age." *Renner*, 786 F.2d at 1424.

### B. Background.

Plaintiff's past relevant work was a job in an adult daycare center for disabled people. (AR 36.) She testified that her jobs involved "assisting the disable[d] adults through personal, and physical, and activities outside the day program." (*Id.*) She also submitted a written statement describing her duties in more detail:

> Transportation of individuals with physical and developmental issues. Assist wheel chair individuals with bathroom issues. Provided assistance to individuals with health maintenance and medication administration, personal care and behavioral development. Assists participation for individuals served in traditional daily and weekly activities such as grocery shopping, going to the movies, or other activities.

(AR 197.)

///

The vocational expert ("VE") classified Plaintiff's past relevant work as a "Mental-Retardation Aide" (Dictionary of Occupational Titles ("DOT") 355.377-018). (AR 42.) A mental-retardation aide has a specific vocational preparation ("SVP") level of "6," making it is a skilled occupation. *See* DOT 355.377-018; *see also* SSR 00-4P, 2000 WL 1898704, at *3 (noting that skilled work corresponds to an SVP level of 5 to 9). When the ALJ asked what skills from this past occupation would be transferable to other work, the VE responded, "There would be skills along the lines of attending to the needs of individuals who are sick, injured, elderly, young, or disabled, collecting and documenting data, adapting to emergencies or frequent changes in job duties." (AR 43.)

The ALJ then asked the VE to identify occupations in the national economy that could be performed by a person with Plaintiff's vocational profile and acquired skills. (*Id.*) The VE identified three light occupations: companion (DOT 309.677-010), nursery school attendant (DOT 359.677-018), and playroom attendant (DOT 359.677-026). These three occupations have an SVP level of either "3" or "4," meaning that they are semi-skilled occupations. *See* SSR 00-4P, 2000 WL 1898704, at *3 (noting that semi-skilled work corresponds to an SVP level of 3-4).

In her decision, the ALJ made two findings on the issue of transferability. First, the ALJ found that Plaintiff had acquired skills from her past relevant work that involved "attending to needs of individuals who are sick, injured, elderly, young or disabled; collecting or documenting data; and adapting to emergencies or frequent changes in job duties." (AR 24.) Second, the ALJ found that Plaintiff's acquired skills were "transferable to other occupations" in the national economy, specifically, the semi-skilled light occupations of companion, nursery school attendant, and playroom attendant. (AR 25.)

///

///

///

6

### C. Analysis.

As an initial matter, the Commissioner argues that Plaintiff waived this claim by failing to raise it, either during the ALJ's hearing or in her request for Appeals Council review. (Joint Stip. at 8.) To the contrary, Plaintiff did not waive the claim by failing to raise it during the ALJ's hearing, because the alleged legal error in the transferability analysis did not become apparent until the ALJ issued a decision. *See Simpson v. Berryhill*, 717 F. App'x 670, 673 (9th Cir. 2017) (no waiver where the claim "did not become apparent until after the hearing when the ALJ issued her decision"); *see also Rose v. Berryhill*, 2018 WL 5262580, at *3 (C.D. Cal. Oct. 19, 2018) ("Nor is the Court persuaded by the Commissioner's contention that Plaintiff waived this issue by failing to question the VE about transferable skills. Here, the ALJ had the express duty to make a finding about the nature of any vocational adjustment.") (citations omitted). Indeed, at the time of the ALJ's hearing on June 6, 2018 (AR 31), it was not apparent that the more stringent transferability standard would have applied, because Plaintiff, who was born on June 18, 2015, had not yet reached the "approaching retirement age" category of 60 years or older. Moreover, Plaintiff was not required to raise the claim before the Appeals Council to preserve it. *See Sims v. Apfel*, 530 U.S. 103, 105 (2000). Thus, the claim was not waived.

Although the ALJ's written findings may have satisfied the transferability standard for a younger worker, they did not satisfy the more stringent standard for an older worker who is limited to very little, if any, vocational adjustment. For a younger worker, "the acquired work skills must be identified, and the specific occupations to which the acquired work skills are transferable must be cited in . . . the ALJ's decision." *Barnes*, 895 F.3d at 704 (citing SSR 82-41, 1982 WL 31389, at *7). The ALJ's decision made these findings. (AR 24-25.) However, the ALJ did not "either make a finding of 'very little vocational adjustment' or otherwise acknowledge that a more stringent test is being applied which takes into consideration [Plaintiff's] age." *See Renner*, 786 F.2d at 1424. Thus, the

transferability analysis was erroneous. *See*, *e.g.*, *Coletta v. Massanari*, 163 F. Supp. 2d 1101, 1106 (N.D. Cal. 2001) (transferability analysis was erroneous where it did not include specific findings regarding vocational adjustment); *Rose*, 2018 WL 5262580, at *2 (same); *Davis v. Berryhill*, 2017 WL 1407637, at *2 (C.D. Cal. Apr. 19, 2017) (same); *see also Centeno-Gutierrez v. Berryhill*, 2017 WL 2903187, at *5 (N.D. Cal May 15, 2017) (transferability analysis was erroneous even though it included a finding of transferability, because it did not include a finding about vocational adjustment).

The Commissioner contends that the ALJ's analysis should be upheld because the relevant job descriptions "on their face" indicate very little, if any, vocational adjustment would be required. (Joint Stip. at 9.) The Court may not, however, examine the relevant job descriptions on their face in order to conduct a vocational analysis that the ALJ's decision did not describe in the first instance. *See Bray*, 554 F.3d at 1226 ("The district court chose to review the transferable skills finding based on what it assumed the ALJ to have determined, but meaningful review of an administrative decision requires access to the facts and reasons supporting that decision.").

And even if the Court could review the relevant occupations in the first instance, it would not be obvious that very little, if any, vocational adjustment would be required. The Commissioner's argument for very little vocational adjustment is premised on Plaintiff's ability to carry over her experience in attending to the needs of vulnerable clients. (Joint Stip. at 10.) But some of Plaintiff's experience in this area, such as personal care assistance, is not obviously a transferable skill. *See* SSR 82-41, 1982 WL 31389, at *3 (tasks such as "bathing, dressing and undressing patients" are not transferable skills). Moreover, other "skills" that the VE identified, such as "adapting to emergencies or frequent changes in job duties" (AR 43) appear to describe "aptitudes" rather than transferable skills. *See Renner*, 786 F.2d at 1424 and n.1 (aptitudes are not skills).

Thus, because it is unclear what transferable skills are being used to bridge Plaintiff's past and future occupations, the Court cannot independently determine that little or no vocational adjustment would be required.

The Commissioner also contends that the ALJ's analysis should be upheld because the ALJ merely failed to say "the magic words 'very little vocational adjustment.'" (Joint Stip. at 11.) "Indeed, it serves no purpose to require every step of each decision process to be enunciated with precise words and phrases drawn from relevant disability regulations. However, it is necessary to assure that the correct legal standard was applied." *Renner*, 786 F.2d at 1424. Here, it cannot be assured that the correct legal standard was applied. Neither the ALJ's decision nor the VE's testimony suggested that they applied the vocational adjustment standard under a different label. Thus, the deficiency was more than the mere absence of magic words or precise phrases.

In sum, the vocational analysis did not contain the required findings regarding vocational adjustment for a person of Plaintiff's limitations and age. Thus, reversal is warranted.

## II.     Remand for Further Administrative Proceedings.

Ninth Circuit case law "precludes a district court from remanding a case for an award of benefits unless certain prerequisites are met." *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) (citations omitted). "The district court must first determine that the ALJ made a legal error, such as failing to provide legally sufficient reasons for rejecting evidence." *Id.* "If the court finds such an error, it must next review the record as a whole and determine whether it is fully developed, is free from conflicts and ambiguities, and all essential factual issues have been resolved." *Id*. (citation and internal quotation marks omitted).

Here, all essential factual issues have not been resolved. The issue of skill transferability raises questions that require the expertise of a vocational expert.

9

Thus, this case "should be resolved through further proceedings on an open record before a proper disability determination can be made by the ALJ in the first instance." *See Brown-Hunter v. Colvin*, 806 F.3d 487, 496 (9th Cir. 2015); *see also Treichler*, 775 F.3d at 1101 (stating that remand for an award of benefits is inappropriate where "there is conflicting evidence, and not all essential factual issues have been resolved") (citation omitted); *Strauss v. Commissioner of the Social Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011) (same where the existing record does not clearly demonstrate that the claimant is disabled within the meaning of the Social Security Act).

Therefore, based on its review and consideration of the entire record, the Court has concluded on balance that a remand for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g) is warranted here. It is not the Court's intent to limit the scope of the remand.

## ORDER

It is ordered that Judgment be entered reversing the final decision of the Commissioner of Social Security and remanding this matter for further administrative proceedings.

DATED: May 15, 2020

MARIA A. AUDERO
UNITED STATES MAGISTRATE JUDGE